BUSBY v. THE ST. LOUIS, KANSAS CITY & NORTHERN RAILWAY COMPANY, *Appellant.*

1. **Railroad**: KILLING STOCK: PLEADING: STATEMENT. In an action against a railroad company, under the statute, for double damages for killing stock, the statement is sufficient after verdict in that regard if enough is contained therein from which it may be reasonably inferred that the animal escaped upon the right of way where the road had neglected to fence.

2. **Defective Fence**: WANT OF TIME TO REPAIR MATTER OF DEFENSE. The fact that a sufficient length of time had not elapsed, after the fence became defective, to allow the railroad opportunity to repair, is a matter of defense for the road to invoke.

3. **Agreement between Railroad and Adjacent Land Owner as to Fence**: LAND OWNER JOINING HIS FENCE TO COMPANY'S. The duty to fence is a statutory one, imposed on the railroads, especially toward the adjacent land owner. Such owner and the railroad may agree as between themselves to dispense with such fence, or that the owner should build and maintain it, or to maintain it in common, and in such cases the land owner cannot maintain an action against the railroad for any injury resulting from the absence of or bad condition of the fence, but the fact that the fence belonged to the company, and the fence inclosing the land owner's field was joined to the former's fence with its consent, creates no legal implication that such owner of the land assumed any obligation to aid in keeping up the fence.

*Appeal from Carroll Circuit Court.*—HON. E. J. BROADDUS, Judge.

AFFIRMED.

*Wells H. Blodgett* and *Geo. S. Grover* for appellant.

The statement upon which the cause of action was

tried below, was fatally defective under sections 809 or 2124 of the statute, or at common law. *Johnson v. Railroad Co.*, 76 Mo. 554; *Mayer v. Union Trust Company; Nance v. Railroad Co.*, 79 Mo. 196; *Cecil v. Railroad Co.*, 47 Mo. 246; *Luckie v. Railroad Co.*, 67 Mo. 245; *Cunningham v. Railroad Co.*, 70 Mo. 202; *Burton v. Railroad Co.*, 30 Mo. 375; *Quick v. Railroad Co.*, 31 Mo. 400; *Scott v. Railroad Company; Turner v. Railroad Co.*, 78 Mo. 578. The evidence was insufficient to support a verdict. The defendant was entitled to a reasonable time in which to repair the fence after having knowledge of a defect therein, or after that period had elapsed in which, by the exercise of reasonable diligence, it could have had knowledge of such defect, and without proof as to this, plaintiff was not entitled to recover. Shearman & Redfield on Neg., § 459; *Clardy v. Railroad Co.* 73 Mo. 578; *Case v. Railroad Co.*, 75 Mo. 668. The fence in question was a partition fence, erected on the division line and owned jointly by the parties, and plaintiff and defendant having failed to keep it in repair, neither party can recover of the other any damages resulting from such neglect. R. S. 1879, §§ 5661, 5656; *Ells v. Railroad Co.*, 48 Mo. 231; *Jackson v. Rutland*, 25 Vt. 15; 2 Waterman on Trespass, pp. 297, 304; *Rust v. Low*, 6 Mass. 101; *Walker v. Watrous*, 8 Ala. 493; *Tewksbury v. Bucklin*, 7 N. H. 518; *Cheatham v. Hampson*, 4 D. & F. 318; *Queen v. Bucknall*, 2 Ld. Raym. 804; *Rider v. Smith*, 3 D. & E. 766; *Mayer v. Arnold*, 4 Met. 589; *Knox v. Tucker*, 48 Me. 373; *Sturtevant v. Morril*, 33 Me. 62; *Weber v. Clossom*, 35 Me 26; *Railroad Co. v. Infirmary*, 32 Ohio St. 566; *Cecil v. Railroad Co.*, 47 Mo. 249.

No brief for respondent.

PHILIPS, C.—This action was instituted in a justice's court, and on appeal tried finally in the circuit court. The statement filed with the justice is as follows:

" Plaintiff says that defendant is a corporation organized under and by virtue of the laws of the State of Mis

souri, and as such corporation, as aforesaid, is engaged in operating a railroad from St. Louis, Missouri, to Kansas City, in Missouri, the line of said road passing through Carrollton township, in Carroll county, Missouri. That on or about the month of October, 1878, defendant had not erected and maintained on the sides of its said road, good and substantial fences, where the same passes along or through inclosed or cultivated fields and lands, suitable or sufficient to prevent cattle or other animals from getting on to said road, and that on or about said month of October, 1878, one yearling heifer of the value of $15, the property of this plaintiff, escaped and got upon said railroad by reason of the said defendant's failing to erect and maintain such fence as aforesaid, and was then and there run upon and over by defendant's agents and servants, and was thereby killed in Carrollton township, county and State aforesaid, wherefore plaintiff asks judgment for said amount of $15 with costs of suit."

The cause was submitted to the court, sitting as a jury, for trial upon the following agreed statement of facts:

" 1st. That defendant is a corporation engaged in operating trains of cars, and that the line of said road passes through Carrollton township, in Carroll county, Missouri. 2nd. That the heifer is the property of plaintiff, and of the value of $15. 3rd. That heifer was killed ——— day of October, 1878, by defendant's engine, etc. 4th. That she was killed in Carrollton township. 5th. That prior to the killing defendant had erected a good and substantial fence between the right of way of defendant and inclosed field occupied by plaintiff, but that at the time of killing, defendant wholly failed to maintain the fence, separating the right of way of defendant and the inclosed field occupied by plaintiff, in condition to prevent cattle from getting on same. 6th. That said heifer, by reason of such failure, escaped through said fence and got on defendant's railroad and was there killed. 7th. That the fence belonged to defendant, and the fence inclosing plaintiff's field was joined

to said fence by defendant's consent. 8th. That both plaintiff and defendant had knowledge that such fence was out of repair, at and prior to the killing. 9th. That defendant adopted act of 1868, amending charter of said defendant requiring defendant to fence sides, etc."

No instructions were asked or given in the case. The court found for the plaintiff in the sum of $15, and rendered judgment accordingly. The defendant has brought the case here on appeal.

I. The first error assigned for the reversal of the judgment is, that the statement is insufficient to support the judgment. The sufficiency of these statements has been the subject of much discussion in this court. Without re-stating the points of controversy, or reviewing the many cases decided, it may be affirmed that the latest adjudications on this subject have quite clearly established the rules by which it is not difficult to determine the sufficiency of this statement. In *Edwards v. Railroad Co.*, 74 Mo. 122, the court say : " There is no express allegation that the cow got upon the track in consequence of the failure of the defendant to erect or maintain fences and cattle-guards, as required by the statute ; but we think the averment quoted, if not equivalent to such an allegation, will at least warrant an inference that the cow got upon the track by reason of the failure to fence. The case presented is not one of an entire failure to state a cause of action,      *      *      but the case is one where the cause of action is defectively stated, and such defective statement is good after verdict, evidence having been given in support of it which cured the defect." And in later cases it has been held substantially, that where enough is averred in the statement from which it may be reasonably inferred that the animal got upon the track in consequence of the failure of the road to fence at that point, this will be sufficient after verdict, when supported by the requisite proof. *Nance v. St. Louis, I. M. & S. R'y Co.*, 79 Mo. 196; *Jackson v. St. Louis, I. M. & S. R'y Co.*, 80 Mo. 147. The allegations of the statement in

question are, that the defendant had neglected to erect and maintain good and substantial fences, where the road runs along and through inclosed and cultivated fields and lands, etc., and that plaintiff's heifer got upon said railroad "by reason of the defendant's failure to erect and maintain such fence as aforesaid, and was then and there run over and killed," etc. It is distinctly averred that the injury occurred "by reason of defendant's failure to erect and maintain such fence as aforesaid." The inference clearly is, that the animal got upon the track at the place where the company had neglected to fence. It is further alleged that the animal was "then and there killed." The agreed statement of facts is: "That said heifer, by reason of such failure, escaped through said fence and got on defendant's railroad and was there killed." So the verdict was amply sustained by the proof, and, after verdict, we think there is sufficient in the statement to support the judgment.

II. It is insisted by appellant, that the evidence did not go far enough to fix a liability on defendant, because it did not affirmatively appear, that a sufficient length of time had elapsed, after the fence got out of repair, to allow defendant an opportunity to make the necessary repair. This objection is not well taken. If the fence was down, and not a lawful fence at the time the animal went upon the track through it, the inference would be, that defendant, upon whom devolved the duty, was not maintaining a lawful fence. Aside from this, the agreed statement recites "that at the time of the killing, defendant wholly failed to maintain the fence   *   *   in condition to prevent cattle from getting on same." If, as a matter of fact, sufficient time had not elapsed, after the fence got out of repair, to allow the defendant to restore it, why did it not include that statement when making an agreeed statement of what the real facts were? It was matter of defense for it to invoke.

III. The final contention of appellant is, that the fence in question was a division fence between the parties;

and, therefore, as the law in such case imposed upon the parties a mutual obligation to maintain it, the plaintiff cannot recover, because he was guilty of contributory negligence. There is no doubt of the rule ordinarily, that where two adjoining proprietors have erected, or agreeed on a division fence between them, and use the same for their mutual accommodation, a common duty is imposed on each to keep up such fence, and neither can recover damage from the other for injury consequent upon this omission. There is much apparent equity in the position of the defendant, that, as the plaintiff, by joining his fence on to the defendant's, was benefited to the extent of being relieved from building a fence on one side of his land, he was thereby, placed under obligation, at least, to help keep up the division line. But is this a legal obligation, under the facts and law applicable to this case ?

We are referred by counsel to the following adjudications: *Jackson v. Rutland R. R. Co.*, 25 *Vt.* 150, and *R. R. Co. v. Miami Co. Infirmary*, 32 Ohio St. 566. In the Vermont case, it is to be observed, that the omission, on the part of the railroad to fence at the given point, was by consent of the adjacent land proprietor. Judge Redfield held that, under the charter of the railroad, as well as the general law of the State, the duty imposed upon the railroad to fence, was only toward the owner of the adjoining land; and, therefore, it and the adjacent owner might stipulate " to let the land remain unfenced, or to assume the burden themselves, and no other land owner could complain upon the mere ground of the increased liability to injury of his cattle."

The basis of this declaration of law is, that, in that state, " it is not now considered that the owners of cattle have any right to depasture them in the highway. The owner of cattle is here left, since the revised statutes of 1839, as at common law. He is bound to keep his cattle at home." Such, however, has never been the law in Missouri. *Gorman v. P. R. R. Co.* 26 Mo. 441; *Bradford v. Floyd,*

80 Mo. 207. A railroad company is not liable in this State for damages to cattle not belonging to the adjacent land holder, where such cattle got upon the railroad by coming through the fence of the adjoining proprietor, provided such be a lawful fence. *Harrington v. C., R. I. & P. R. R. Co.*, 71 Mo. 384, 385.

The Ohio case, likewise, rests upon peculiar provisions of the local laws of that state. As appears from the decision, all railroad fences constructed by the company become, by operation of the statute, partition fences. When the railroad track passes through inclosed fields, "the proprietor thereof is required to construct one-half the fences necessary to partition such inclosed lands from the railroad track." And "they shall be kept in repair, in all respects, as partition fences are now by law required to be kept in repair." But, both by the charter of defendant and the general law of this State, the defendant company is "required to erect and maintain good and substantial fences on the sides of said railroad, or its branches, where the same passes through, along or adjoining inclosed or cultivated fields or uninclosed lands." Laws 1868, § 3, p. 113; R. S., § 809. This is a statutory obligation, imposed on the railroad company, especially toward the adjacent land owner ; and without more, no duty at law rested on the plaintiff to keep up such fence. Such adjacent proprietor and the railroad company might agree, as between themselves, to dispense with such fence, or that the adjoining proprietor should build and maintain it, or to maintain it in common. In such cases the land owner could not maintain an action against the company for any injury resulting from the absence, or bad condition of such fence. This was so held in *Ells v. P. R. R.*, 48 Mo. 231. Was there any agreement or understanding between the plaintiff and defendant, which would exempt the defendant from its statutory obligation ? The only evidence touching this issue, is the following recital in the agreed statement: "That the fence belonged to defendant, and the fence inclosing plaintiff's field was joined

4—81

to said fence by defendant's consent." This, manifestly, was nothing more than a mere privilege, conceded by defendant to plaintiff, to join his fence at two corners to the fence which "belonged to defendant." The fence still belonged to defendant. No legal implication can arise from such consent, that the plaintiff assumed any obligation to aid in keeping up this fence. The most the law, in such state of case, would exact of the plaintiff is, that he should do no injury to defendant's fence where he joined, and could not complain of defendant, if his cattle should get on defendant's track, and be killed by reason of the fence being impaired at the point of junction. Section 5,656 Rev. Stat. cannot serve the defendant. Even were it conceded that this statute applies to railroads, the fence could only become a division fence "on demand made by the person owning such fence," on the other party to pay "one half the value of so much, thereof, as served to inclose his land, and upon such payment, shall own an undivided half of such fence." The remaining clauses and succeeding sections point out the remedy, etc., for enforcing the rights of such interested parties in the division fence. There is no pretence that any such steps were taken in this case.

It follows that the judgment of the circuit court should be affirmed. All concur.