WILLIAM P. DAVIS, Respondent, v. THE HANNIBAL & ST. JOSEPH RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, November 23, 1885.

1. RAILROADS—REQUIREMENT TO ERECT AND MAINTAIN FENCES.—The statutes of this state (sections 5651, 5652, Revised Statutes), not only imposes the obligation on railroad companies to erect a lawful fence, in certain cases, and defines what shall constitute a lawful fence ; but it also requires them to *maintain* such fence thereafter.

2. ——— DUTIES IN THE NATURE OF A POLICE REGULATION—DEGREE OF CARE REQUIRED.—This duty imposed by the statute on the rail-

roads is in the nature of a police regulation, and is designed as a means of greater security to the lives and limbs of passengers on the trains, and also for the prevention of injuries to animals liable to be about the track, Therefore, as the corporation must maintain the fence to such an important end, the law exacts of it a degree of care and vigilance in looking after its fences, commensurate with the peril to life and property.

3. ———— OWNERS OF STOCK NOT REQUIRED TO RESTRAIN.—In this state the owners of stock are not required to keep them up or restrain them from going about railroad tracks. *Gorman v. R. R. Co.*, 26 Mo. 441 ; *Busby v. R. R. Co.*, 81 Mo. 43.

APPEAL from Clay Circuit Court, HON. GEO. W. DUNN, Judge.

*Affirmed.*

The case and facts are stated in the opinion.

THOMAS E. TURNEY and STRONG & MOSMAN, for the appellant.

I. Proof of *negligence* in failing to repair, after notice of the defect, or of negligence in failing to discover it seasonably and to repair it within a reasonable time thereafter, was necessary to entitle plaintiff to recover. *Clardy v. Ry. Co.*, 73 Mo. 578 ; Sher. & Redf. on Negligence, sect. 459 ; *Fitterling v. Ry. Co.*, 79 Mo. 508. There was a total failure of evidence of the negligence charged.

II. Plaintiff's evidence disclosed contributory negligence, and, therefore, he should not recover. *Buesching v. Gas Co.*, 73 Mo. 229 ; *Grebble v. Sioux City*, 38 Iowa 390 ; *Carey v. N. W. Co.*, 43 Wis. 682.

III. The motion for new trial should have been sustained. Cases, *supra*.

D. C. ALLEN, for the respondent.

I. The circuit court committed no error in refusing to give instructions asked by defendant. They *assume* facts which were not *proved*, and inferences from them not justified even if proof had been made, while the *evidence* is opposed both to the assumption and inferences.

II. The question is, whether the failure to repair the defect in the fence, for two, perhaps four weeks prior to the accident, was not in itself, a sufficient evidence of negligence to warrant recovery. It is the railroad company's duty to *construct* lawfully as well as to *maintain* lawfully, and it cannot permit a defect to remain unrepaired for an unreasonable length of time. The court by its findings held the time unreasonable. *Clardy v. Ry. Co.*, 73 Mo. 376; *Vineyard v. R. R. Co.*, 80 Mo. 92; Sher. & Redf. on Negligence (2 Ed.) 533, sect. 459.

III. The evidence shows no contributory negligence on the part of the respondent. It was not negligence to keep the steer in his enclosed field, whether he knew of the defect in the fence or not. Rev. Stat., sect. 809; *Atchison v. Ry. Co.*, 13 Cent. Law Jour. 249.

IV. The defect in the fence was not caused by the act of God. What happened could have been foreseen and prevented. Defendant failed to either erect or maintain such fence as by law it was required to do.

V. It was established that defendant's railroad passed through plaintiff's enclosed field; that defendant failed to erect and maintain such a fence as the law requires; and that plaintiff's steer strayed upon defendant's track and was killed by its train for want of such fence; that evidence without more made out a *prima facie* case for plaintiff. *Williams v. Ry Co.*, 74 Mo. 453, 455.

PHILIPS, P. J.—This action was begun in a justice's court, and tried on appeal in the circuit court, where plaintiff again recovered judgment, from which the defendant prosecutes this appeal. The action is based on section 809, Revised Statutes, commonly known as the double liability clause for injury done to stock by railroad companies, resulting from the failure of defendant to erect and maintain a sufficient fence at the point where the animal got on the track.

The evidence, as shown by the bill of exceptions, is as follows:

"William P. Davis, plaintiff, being sworn, testified in his own behalf, as follows: I am the plaintiff in this suit, and was the owner of the steer sued for at the time he was killed. The steer was struck and killed by a freight train of defendant on the 10th day of July, 1883, in Liberty township, in Clay county, state of Missouri. It was a good, smooth steer, weighing eight hundred and fifty pounds, and at the time it was killed was worth in market forty dollars cash. I saw the train at the time it struck the steer, and saw the steer five minutes after it was struck. At the point where the steer was killed, and also at the point where he got on the railroad track, the railroad passes through enclosed fields belonging to me. There is no crossing of any kind, public or private, at or near said points, nor any incorporated town, village or city, nor any railroad switch or switches, or station. The railroad at both points was fenced by the railroad company with a post and wire fence of six strands of wire some time before the accident. At the point where the steer got on the track the fence crossed a hollow, or branch, and the ground being wet at the time the posts were set, when the wire was stretched, it lifted the posts, which were set in the hollow, leaving a space or opening underneath unfenced, that a grown man or steer could walk erect through. The steer passed through this opening on to the track from my enclosed field, and was killed a short distance from the opening. This opening in the fence had been there, as I have described, for two weeks, I know, before the accident, and probably for four weeks before. I am satisfied the opening had been there from the time of the cyclone, which passed over that part of the country about a month before the steer was killed. Liberty is the nearest incorporated town, city or village to the place where the steer was killed, and Liberty is about three or four miles away from there.' "

This was all the evidence.

The plaintiff asked no declaration of law. The cause was submitted to the court sitting as a jury. The de-

fendant asked, and the court refused to give the following instructions:

"1. The evidence of plaintiff, showing that the defendant had recently constructed at the point in proof, the fence required by law, and not showing that the same had been out of repair for an unreasonable time, or that defendant or any of his employes had notice that the same was out of repair, the finding must be for the defendant."

", 2. Under the evidence the plaintiff cannot recover."

I.   The first insistance of appellant is, that the proof showing that defendant had erected shortly before the injury a lawful fence, the law will not subject it to liability for an injury resulting from the fence afterwards getting out of repair, until it had notice of the defect, or reasonable time for its discovery; and that the evidence wholly fails to show that it had such notice, or that a reasonable time had elapsed after the fence got out of repair within which the law would presume it ought to have made the discovery.

The first false assumption in defendant's position is, in asserting that it had once built a lawful fence. There is no proof in this record of such fact. The statute defines what shall constitute a lawful fence. Sects. 5651, 5652. If composed of posts and wires, it must be "sufficiently close," and be "at least four and one-half feet high." The only description given by the witness of this fence is, that it was "a post and wire fence of six strands of wire." How close the strands were, or how high they reached is not stated. And if it were conceded that the fence possessed the required closeness and height, it is doubtful whether it could be maintained that defendant had complied substantially with the spirit of the statute by sticking the posts in such soft ground, in the bed of the ravine, that the natural tension of the wires would lift the posts so high out of the ground that a cow or man might pass erect under it.

II.   But waiving all these considerations, the statute

not only imposes the obligation on the railroad company to erect a lawful fence, but it must *maintain* such fence thereafter. There is no question of the rule, that after the corporation has once erected such fence, in order to hold it liable for an injury resulting to stock from the fence being down or out of repair, it must appear that the company had notice of the fact, and reasonable time thereafter in which to make the needed repair, or that sufficient time had elapsed between the time of the fence falling down or being out of condition and the date of the injury, to create a reasonable presumption of negligence on its part in not discovering the defect.

This duty imposed by statute on the railroads is in the nature of a police regulation, and is designed as a means of greater security to the lives and limbs of passengers on the trains, and also for the prevention of injuries to animals liable to be about the track. *Silver v. R. R. Co.*, 78 Mo. 528. Therefore, as the corporation must maintain the fence to such an important end, the law exacts of it a degree of care and vigilance in looking after its fences, commensurate with the peril to life and property.

The evidence of plaintiff was, that this fence had been in unlawful condition for at least two weeks, and his better impression was for four weeks, next preceding the injury. It was a defect so conspicuous that it was inexcusable for defendant's servants not to have discovered it had they been exercising the most ordinary care in inspecting their road and its fences. The time was ample for them to have made the discovery. The court would have been quite justified in declaring the law to be, that if the jury found from the evidence that this defect had existed in the fence for two weeks or more, that was a fact from which they might infer negligence, etc. *Varco v. Chicago, M. & St. P. Ry. Co.*, 13 N. W. Rep. 921.

In *Busby v. R. R. Co.* (81 Mo. 43), this question is considered. The court say: "If the fence was down, and not a lawful fence at the time the animal went upon the track

through it, the inference would be that defendant, upon whom devolved the duty, was not maintaining a lawful fence. * * * If, as a matter of fact, sufficient time had not elapsed, after the fence got out of repair, to allow the defendant to restore it, why did it not include that statement when making an agreed statement of what the real facts were? It was matter of defence for it to invoke."

III. It is finally contended by appellant that the plaintiff was guilty of contributory negligence in permitting his cow to run in his pasture knowing the gap to exist in the railroad fence.

Without undertaking to discuss the circumstances, in which, in my opinion, under the authorities applicable to our statute, the owner of stock would be prevented from recovering under section 809 on account of contributory negligence, it is sufficient to say that it has no application to the facts of this case. Time and again the supreme court has decided that in this state the owners of stock are not required to keep them up or restrain them from going about railroad tracks. *Gorman v. R. R. Co.*, 26 Mo. 441 ; *Busby v. R. R. Co., supra ; Turner v. R. R. Co.*, 78 Mo. 578, 580.

The statute makes it the imperative duty of the railroad company to fence its road. This it must do for the protection of the adjacent land owner to avoid killing or injuring his stock. Until it does so fence, and maintain the fence, the statute declares that the company shall be liable to the penalty of paying the owner of the stock injured double damages. The position of appellant would practically nullify the statute, and make it the duty of the owner to fence against the railroad. It would practically deny to the adjacent proprietor the benefit of his pasture. The company refuses and neglects for a month to observe the law. When the owner of the cow asks it to pay the statutory penalty, it says, " it is true I did not obey the law, but you knew I did not, and, therefore, you had no right to turn your stock on the commons or your own pastures where they might possibly stray on to

the road. The only escape from the logic of this ruling, for the stock owner, would be to either keep his stock up or guard them against the road ; and all the railroad company would have to do to escape the liability and penalty of the statute, would be to bring home notice to all adjacent land proprietors, that it did not have any fence, and did not intend to have any. See *Burlington & M. R. R. v. Webb*, 24 N. W. Rep. 706, and notes.

The judgment is affirmed. All concur.