## SMITH v. THE CHICAGO, R. I. & P. R. R. Co.

1. Railroad: LIABILITY FOR STOCK KILLED: NEGLIGENCE. Railroad companies are under no obligation to fence their depot grounds so as to exclude cattle, nor to keep watchmen or guards there to exclude them.

2. —— While under our law, cattle running at large, and upon the depot grounds of a railroad company, are not trespassers, yet if their owner, by turning them out, enables them to frequent a place of great peril on the depot grounds or track of a railroad company, he cannot demand that the company shall stop its trains and drive them off, or slacken the speed, or change the time table, in order to deliver his cattle from the peril into which he has voluntarily placed them.

*Appeal from Johnson Circuit Court.*

THURSDAY, JULY 25.

ACTION to recover damages for cattle injured and killed by the defendant's engine and train of cars. The plaintiff obtained a verdict for $220.95. The defendant appeals. The further facts are stated in the opinion.

*Edmonds & Ransom* for the appellant.

*William C. Gaston* and *John Williams* for the appellee.

COLE, J. — There is no conflict or difference whatever in the testimony of the witnesses in the case. The plaintiff was the owner of two steers killed, and one so badly injured as to be worthless, and their real value was the sum found by the jury. They were killed and injured by the defendant's train on its unfenced depot grounds, and just in front of its passenger platform, at Tiffin, a station

a few miles west of Iowa City, at a little after ten o'clock at night of the 15th of June, 1870. The train was going west, and was known as the "lightning express," making no stop at Tiffin; it was on time and was running at its usual speed; it was not customary to sound the whistle at that station, but on the night of the accident in question, the whistle was sounded before reaching, and up to the depot grounds. It was a moonlight night, and cattle could be seen about one hundred feet. Cattle were frequently, though not daily, running at large near the station, and one accident or injury to stock had occurred there four or five years before. The station agent had always driven off cattle when he found them there, and on the night of this accident and when he left the depot a short time before the train passed, there were no cattle around.

After the evidence was closed, the court instructed the jury, *inter alia*, as follows: "8th. If you find from the testimony that the defendant's station, where the stock in question was killed, was one of more than ordinary danger, by the frequency with which stock had been in the habit of straying thereunto, and if it was known to the defendant's employees that such danger existed, and if the defendant, under such circumstances, took no precaution to keep such stock from its track; but if, knowing the existing danger, the defendant's employees approached the station in question with the defendant's train, with no diminished speed, then the defendant is liable for any injury to plaintiff's stock occurring under such circumstances."

Under our statute (Laws of 1862, ch. 169), railroad companies are required to fence their roads, where they have a right to fence, and for failing to fence, are made absolutely liable for the value, to the owner, of any live stock killed or injured by reason of the want of such fence. But, it has been *held*, that this statute did not require railroad companies to fence their depot grounds.

*Davis* v. *The B. & M. R. R. Co.*, 26 Iowa, 549; *Rogers* v. *The C. & N. W. Ry. Co.*, id. 558; *Durand* v. *The C. & N. W. Ry. Co.*, id. 559. And it has also been *held*, that, in this State, the common-law rule requiring every man to keep his cattle within his own inclosure, under the penalty of answering in damages for their trespasses, did not obtain. *Wagner* v. *Bissell*, 3 Iowa, 396; *Heath* v. *Coltenback*, 5 id. 490. In other words, cattle are free commoners. *Alger* v. *M. & M. R. Co.*, 10 Iowa, 268.

As applied to this case, then, the plaintiff's cattle were not trespassers by reason of being on the defendant's track and depot grounds; nor was the defendant under any obligation to fence the depot grounds, so as to exclude the cattle, and it must necessarily follow, that if the defendant was not required to build a fence to exclude the cattle, it was not required to keep a watchman or a guard there to exclude them. For the requirement of the statute to build a fence is but another form of stating the obligation to exclude the cattle. If the former does not exist, the latter does not, as between these parties. But, further than this, the defendant had a right to its track, while the plaintiff's cattle had no right there, though, negatively stated, they were not in the wrong for being there. If they were injured while thus on the track and without the defendant's negligence, the loss must be borne by the plaintiff. If both parties were negligent, still the plaintiff cannot recover.

Now, if the cattle were in the habit of frequenting the track, as between the plaintiff and this defendant, it became the plaintiff's duty to be the more diligent in his efforts to keep them off; and while this fact might require greater diligence and care on the part of defendant, yet, if neither the plaintiff nor defendant used greater care, they were equally negligent, and neither could recover from the other. In other words, the owner of cattle may not turn them

out and enable them to frequent a place of great peril on the depot grounds or track of a railroad company, and then demand that the railroad company shall stop its trains and drive off his cattle, or slacken the speed, or change the time table, in order to deliver his cattle from the peril into which he has voluntarily placed them. Any other rule than this would tend to destroy the usefulness and purposes of railroads as facile avenues of commerce and means of rapid travel. If the injury to the cattle was caused by the negligence of those having charge of the train, and which injury might have been avoided by the use of ordinary diligence and care, then, of course, the plaintiff might recover. But the facts set out in the instruction do not, of themselves, or necessarily, constitute such negligence. Nor, indeed, does the evidence tend to any considerable degree to establish even those facts. The court erred, therefore, in giving the eighth instruction.

The fifth instruction is also erroneous. It is as follows: The defendant was not bound to fence its depot grounds, and is not liable for failing to do so. And it is not absolutely required at all times to employ watchmen or guards to prevent stock from straying upon their track at their depot grounds; yet there might be circumstances under which the defendant would be required, in the exercise of ordinary care, to employ guards or watchmen to prevent stock from straying upon their track." The error of this instruction is manifest from the foregoing discussion, and it tended to intensify the error of the eighth instruction, above set out. As between the owner of the cattle and the railroad company, the latter cannot be required to keep a watch or guard at its depot. The rule may be different as respects passengers on its trains, for there a different principle applies. It is not necessary to notice the questions made upon the evidence.

Reversed.