JAMES E. EDIE & SON, Appellants, v. KANSAS CITY SOUTHERN RAILWAY COMPANY, Respondent.

Kansas City Court of Appeals, October 15, 1908.

1. **RAILROADS: Killing Stock: Fencing: Statute: Liability.** The point at which cattle entered upon the right of way of a railroad determines the liability of the company for the injury.

2. ———: ———: ———: ———: ———: **Public Road.** Where a public road bisects the station grounds, a cattle-guard cannot be put in upon the line of the road, since it would impede business and endanger the safety of the employees.

3. ———: ———: ———: ———: **Law and Fact.** Where the facts relating to the necessity of keeping the grounds about the station uninclosed, are conflicting, the question is for the jury; but where the facts are conceded and have only a single interpretation, the question becomes a matter of law for the court.

Appeal from Cass Circuit Court.—*Hon. Nicholas M. Bradley,* Judge.

AFFIRMED.

*A. A. Whitsitt* for appellant.

(1) In order to constitute a cause of action, three things devolve upon the plaintiff: *First,* that the injury must appear to have occurred at a place where there was no lawful fence; *Second,* at a place where such fence could have been erected by the company should it have so desired; and *third,* that it occurred at a place other than the crossing of a public highway and not within the limits of any incorporated town or city. Clarkson v. Railroad, 84 Mo. 586; Vail v. Railroad, 28 Mo. App. 372; Downey v. Railroad, 94 Mo. App. 137; Vanderworker v. Railroad, 51 Mo. App. 166; Riley v. Railroad, 89 Mo. App. 375; Taylor v. Railroad,

28 Mo. App. 556; Brandenburg v. Railroad, 44 Mo. App. 224; Prather v. Railroad, 84 Mo. App. 86. (2) If an animal is hurt at a point on a railway track where the same is required to be fenced, and it has not been fenced, the company is liable regardless of the fault of the owner, and whether a railroad company could have safely constructed cattle-guards at a given point and where it is controverted in the evidence, the court cannot by peremptory instruction take the question from the jury. Prather v. Railroad, 84 Mo. App. 86. (3) A railroad company is not required to fence along the sides of its railroad at any point within the limits of an incorporated town; but it may lawfully so fence its railroad at any place within the limits of such a town, where its railroad is not crossed by a street or alley already open, or dedicated to the public, and where by so fencing the railroad, the public would not be inconvenienced. Lane v. Railroad, 18 Mo. App. 555; Wymore v. Railroad, 79 Mo. 249; Ellis v. Railroad, 48 Mo. 232; Young v. Railroad, 79 Mo. 339. The right of way must not be confounded with the track. Boone v. Railroad, 83 Mo. App. 460; Ellis v. Railroad, 89 Mo. App. 241; Russell v. Railroad, 26 Mo. App. 375; Johnson v. Railroad, 27 Mo. App. 379; Staub v. Eddy, 47 Mo. App. 189; Bean v. Railroad, 20 Mo. App. 641; Brandenburg v. Railroad, 44 Mo. App. 224; Welsh v. Railroad, 55 Mo. App. 599; Downey v. Railroad, 94 Mo. App. 137; Smith v. Railroad, 111 Mo. App. 410; Hillman v. Railroad, 99 Mo. App. 271; Elliott on Railroads, sec. 1194.

*Cyrus Crane, C. W. Sloan* and *Geo. J. Merscreau* for respondent.

(1) The law presumes that the action of the trial court in granting a new trial herein was correct; that any error occurring in the trial was prejudicial to the defendant, and will sustain the action of the trial court

if it can be so done upon any ground alleged in the motion for a new trial. Kuenzel v. Stevens, 155 Mo. 280; Ittner v. Hughes, 133 Mo. 679; Herndon v. Lewis, 175 Mo. 116; Hoepper v. Hotel Co., 142 Mo. 378; Bunyan v. Railroad, 127 Mo. 12; Taliaferro v. Evans, 160 Mo. 380; McCullough v. Insurance Co., 113 Mo. 606; Longdon v. Kelly, 51 Mo. App. 572; Ensor v. Smith, 57 Mo. App. 584; Saville v. Huffstetter, 63 Mo. App. 273; Johnson v. Boonville, 85 Mo. App. 199. (2) Under the undisputed evidence the plaintiffs' cattle having entered the right of way at the public crossing and at the point where the railroad company was not obliged to maintain a fence or cattle-guard, the defendant was not liable and the defendant's demurrer to the plaintiff's evidence and its demurrer at the close of all the evidence should have been sustained. R. S. 1899, secs. 1105, 2867; Gilpin v. Railroad, 77 S. W. 118, 197 Mo. 319; Pearson v. Railroad, 33 Mo. App. 543; Acord v. Railroad, 113 Mo. App. 84; Kirkpatrick v. Railroad, 120 Mo. App. 416; Sowders v. Railroad, 104 S. W. 1122; Hurd v. Chappell, 91 Mo. App. 317; Snyder v. Railroad, 73 Mo. 465; Warden v. Railroad, 78 Mo. App. 664; Sappington v. Railroad, 95 Mo. App. 387; Wright v. Railroad, 56 Mo. App. 367. (3) No negligence being claimed under the petition or shown under the evidence, the defendant's demurrer to the plaintiffs' evidence, requested at the close of all the evidence, should have been sustained, and the court's action in granting a new trial therefore was proper. Redmond v. Railroad, 104 Mo. App. 651; Smith v. Railroad, 111 Mo. App. 410; Lloyd v. Railroad, 49 Mo. 199; Swearingen v. Railroad, 64 Mo. 73; Robertson v. Railroad, 64 Mo. 412; Webster v. Railroad, 57 Mo. App. 451; Pearson v. Railroad, 33 Mo. App. 543.

JOHNSON, J.—Four steers belonging to plaintiffs escaped from their farm to a public highway and found

their way to defendant's railroad where they were killed by a passing train. Plaintiffs brought suit for single damages, alleging in the petition that "defendant failed and neglected to erect and maintain lawful fences and cattle-guards on the sides of its said railroad at said point but suffered said railroad track on both sides thereof to be and remain unfenced and without cattle-guards at the time and place where said steers got upon said railroad track and were killed," etc.

The answer is a general denial. At the conclusion of the evidence introduced by plaintiffs and at the conclusion of all the evidence, defendant asked the court to instruct the jury to return a verdict in its favor but these requests were refused and issues of fact were submitted in the instructions given. The verdict was for plaintiffs but it was set aside on the hearing of the motion for a new trial, on the grounds that the court erred in refusing to give the instruction in the nature of a demurrer to the evidence. A new trial was ordered and plaintiffs appealed.

The animals were killed near defendant's station at West Line. The station and yards at this place are in the country, outside the limits of the town of West Line, which is three-fourths of a mile distant. The railroad runs north and south and is crossed by a public road, the south line of which is sixty feet north of the station building and is abutted by the station platform. South of the road and adjacent to the tracks are the section house, tools house and stockyards. North of the road and on the right of way are a mail crane and the station privy. The station and other improvements, with the exception of the stockyards, lie between the main track and the side or spur track to the west thereof. The stockyards are immediately west of the side track. The side track diverges from the main line at a switch which is 668 feet north of the public road. Its south end does not join the main track and is

several hundred feet south of the station. The first cattle-guard north of the station is at a point 402 feet north of the switch. Between that point and the public road defendant maintains no right of way fences, but the farmer through whose land the railroad runs has good fences on each side thereof. These fences form an enclosure for the tracks which, on account of the cattle-guard at its apex and the absence of one at its base, is a *cul de sac* into which live stock may enter from the public road and from which they cannot escape at the sides or apex without breaking through the farmer's side fences or defendant's cattle-guard. Plaintiffs' cattle were in an enclosed lot south of the public road and east of the station. They broke out at night, traveled west on the public road to the open end of the enclosure and thence north up the right of way to a point thirty or forty feet south of the cattle-guard where they were struck and killed by a south-bound passenger train. Defendant employs an agent at the station and transacts considerable business, both passenger and freight, with the public at that point. The spur track is used for freight cars to be loaded, unloaded or stored for switching and as a passing track for trains scheduled to meet at that point. The principal part of the business of loading and unloading cars was done on that part of the track south of the public road. The upper end of the track was used chiefly by trains in passing and switching.

The cause of action pleaded in the petition is founded on section 2867, Revised Statutes 1899, which provides: "When any animal or animals shall be killed or injured by the cars, locomotives or other carriages used on any railroad in this State, the owner of such animal or animals may recover the value thereof in an action against the company or corporation running such railroad after any proof of negligence, unskillfulness or misconduct on the part of the officers, servants or agents

of the company; but this section shall not apply to any accident occurring on any portion of such road that may be enclosed by lawful fences or in the course of any public highway."

Since the evidence of plaintiffs, as well as that introduced by defendant, shows beyond question that the animals entered the enclosure described from the public highway, we think that is the point where they must be deemed to have entered defendant's right of way, and the question at issue is whether or not defendant should have fully enclosed that section of its right of way by closing the gap at its base with a cattle-guard and wing fences. We approve what was said by the St. Louis Court of Appeals in Kirkpatrick v. Railroad, 120 Mo. App. 416:

"It is well settled in the jurisprudence of this State that it is the point at which the cattle enter upon the right of way of the railroad which determines the liability or non-liability of defendant in these cases (Snider v. Railway, 73 Mo. 465; Acord v. Railway, 113 Mo. App. 84, 87 S. W. 537), not the point at which the actual collision occurred. It is wholly immaterial that after going upon the right of way at a point which would affix liability against the railroad, the cattle afterwards, in their wanderings, passed a half mile north on the track and over a point where a cattle-guard should have been constructed."

We do not believe defendant could have maintained a cattle-guard at the place where the cattle entered, i. e., the north line of the public road, without seriously impeding the transaction of the business of the station with the public, and what is still more serious, endangering the safety of its employees in the performance of the work necessary to be done in switching and handling cars and trains. Construing section 2867, we said in Gilpin v. Railroad, 77 S. W. 118: "It is well settled that if cattle-guards could not have been placed at the

crossing where animals go onto the track, without endangering the life or limb of the railway's employees in transacting the business of the road with the public, and in performing the necessary work connected with the operation of the cars, such as switching cars, trains, etc., no liability arises for omitting to so place them." And in the same case, the Supreme Court said (197 Mo. 319) : "According to the interpretation that this court and our Courts of Appeal have in several cases put upon that statute, no liability will attach to a railroad company for failure to put a cattle-guard in a place where to do so would endanger the lives or limbs of its employees. There is no such express exception written in the statute, but to construe it otherwise would make its meaning unnatural."

The question of whether the presence of a cattle-guard at that place would have proved to be an obstruction to the transaction of business with the public and a menace to the safety of defendant's employees was not one to be left to the decision of defendant, but is for the determination of the courts and is to be solved in the light of all the facts and circumstances of the situation. The rule is that where essential facts are in dispute, or where the inference to be drawn from conceded facts might be a subject of difference among reasonable minds, the question of whether a necessity did exist for the tracks to be uninclosed at the point in controversy should be sent to the jury as an issue of fact; but where the conceded facts admit of no other reasonable conclusion than that such necessity did exist, the court should hold, as a matter of law, that the railroad company cannot be held liable on account of the omission to enclose the tracks. Manifestly defendant would have laid a veritable mantrap in the station yards had it bisected them at the public road with a cattle-guard. We quote again from Gilpin & Co., supra: "The court trying the fact was not bound to say that

there was no evidence that a cattle-guard in that position, was dangerous to the lives of the railroad employees simply because there was no expert evidence introduced on the subject. The thing itself spoke. Men know by common experience what a cattle-guard is, as well as they know what a fence is; they also know what a switch in a railroad is; they know the purposes of those things and how they are used. We need no expert testimony to tell us that a cattle-guard in a switchyard would endanger the lives of the men working there."

With these principles in mind, the learned trial judge was right in holding that the demurrer to the evidence should have been sustained. Accordingly the judgment is affirmed. All concur.