[Civil No. 1967.   Filed December 30, 1922.]

[211 Pac. 566.]

JOHN BARTON PAYNE, Director-General of Railroads, as Agent Under Section 206 of the Transportation Act, 1920, Appellant, v. E. CLIFFORD, Appellee.

1. RAILROADS—COMPLAINT UNDER FENCING STATUTE FOR KILLING LIVESTOCK HELD SUFFICIENT.—A complaint, alleging killing of stock by a train at a stated time and place, occasioned by negligence in the maintenance of the fence inclosing the track, by reason of which the cattle strayed on right of way, sufficiently states a cause of action under Civil Code of 1913, paragraph 3779, and it is not necessary to set forth the precise location of the fence, nor to allege that it was located at a place where the statute permits a fence to be maintained.

2. RAILROADS—NO ACTION LIES UNDER FENCING STATUTE FOR KILLING STOCK AT HIGHWAY CROSSING.—Public convenience and necessity, requiring highway crossings to be kept open, and the fencing in

On constitutionality of statutes requiring railroad company to fence tracks, see notes in 3 Ann. Cas. 182; 2 A. L. R. 798; 31 L. R. A. (N. S.) 861, 867.

The liability of company operating railroad along highway for 'injury to livstock is discussed in note, L. R. A. 1917E, 770.

of crossings being prohibited by Penal Code of 1913, section 568, no action lies under Civil Code of 1913, paragraph 3779, for the killing of livestock on a public highway crossing because of the failure to maintain a fence at the crossing.

3. RAILROADS — NEGLIGENCE BASIS OF ACTION UNDER STATUTE FOR KILLING STOCK.—The basis of the action, under Civil Code of 1913, paragraph 3779, for killing livestock on an unfenced railroad track, is negligence; that is, the failure to perform a duty thereby imposed on the company.

4. RAILROADS—OBLIGATION TO FENCE IMPLIED.—The obligation of a railroad company under Civil Code of 1913, paragraph 3779, to fence its line arises only by implication from the imposition of the liability to pay damages for killing stock, and it is the failure to perform the requirement to fence at such places as the law permits fencing and the requirement to refrain from killing at such places that gives rise to a cause of action.

5. RAILROADS — NEGLIGENCE BASIS OF RECOVERY FOR INJURING LIVESTOCK WHERE FENCING IS NOT REQUIRED.—A railroad company may leave its line unfenced, there being no absolute duty, either at common law or by statute (Civ. Code 1913, par. 3779), to fence, and in such event it can be held liable for livestock injured or killed by cars on any portion of the line which it is lawful to fence, and it cannot be held liable for livestock injured on any portion of the line which it is unlawful to fence, without alleging as negligence some other act than the failure to fence.

APPEAL from a judgment of the Superior Court of the County of Graham. W. R. Chambers, Judge. Reversed.

Mr. Charles Rawlins, for Appellant.

Mr. E. L. Spriggs, for Appellee.

JENCKES, Superior Judge.—The plaintiff, appellee, brings this action against the defendant, appellant, to recover damages for the killing of three head of livestock by defendant's railroad train. The jury returned a verdict for plaintiff upon which judgment was entered. Appellant's first assignment of error challenges the sufficiency of the complaint, the trial court having overruled his general demurrer. The complaint alleges, substantially, the killing of the

stock by one of defendant's trains at a stated time and place—

"occasioned by the negligent manner in which the servants and employees of defendant maintained the fences along said line of railroad; that the defendant permitted said fences inclosing said railroad track to become dilapidated and torn down, by reason of which plaintiff's cattle were permitted to stray upon the tracks and right of way of defendant."

This sufficiently states a cause of action against the defendant for the killing of livestock under paragraph 3779, Revised Statutes of 1913. It is not necessary to set forth the precise location of the defective fence; neither is it necessary, as urged by appellant, to allege *expressis verbia* that such fence or other barrier was located at a place where the statute permits a fence or other barrier to be maintained, because the failure to maintain a good and sufficient fence at any other point would not be negligence, and proof of such failure would not support the allegation of the complaint. The allegation of negligence in the maintenance of the fence, coupled with the allegation of the killing of the stock by reason thereof, is a sufficient charge of failure to maintain the fence at a point where the statute permits a fence to be maintained. The demurrer to the complaint was properly overruled.

Appellant's second assignment of error is the refusal of the trial court to grant his motion for an instructed verdict at the close of all the evidence, on the ground that the evidence does not support the allegations of the complaint. The evidence shows that the stock came upon the right of way from plaintiff's pasture through a gap in the right of way fence, where it was torn down for about eighty rods. Some of them later on got into the field on the opposite side of the track belonging to one H. R. Nelson, who,

finding them there, drove all of the stock, including those which remained upon the right of way, out into the public highway at a point about a quarter of a mile distant from the railroad crossing where the killing occurred. His testimony in this respect was as follows:

"In the morning before the killing of these animals they were, some of them, in my field, and some of them on the right of way. I gathered them all up and drove them out on the road. . . . I drove them all out of the right of way and all out of my pasture through my corral into the highway, . . . fifteen or twenty head."

Shortly thereafter the stock went on to the premises of one Eliza R. Johns, across the highway from the Nelson place. Mrs. Johns, seeing them in her inclosure, drove them back into the highway. From the Johns place they passed directly along the highway and on to the railroad crossing, where three of their number were struck and killed by defendant's train. There is no dispute about the facts presented by the foregoing statement of the evidence, and if they do not support the judgment, it must be .reversed.

One line of appellant's argument upon this assignment of error is directed to the proposition that, as the agency of third parties over which he had no control intervened, the failure to fence could not have been the proximate cause of the killing of the livestock. Appellee's answer to that argument is that as such third parties were acting within their legal rights in driving the stock from their respective premises, their acts in so doing could not operate as an intervening efficient cause. The conclusion which we have reached upon the whole case, however, disposes of that question; for, even if the failure to fence were the proximate cause of the killing of the

stock, nevertheless it could not give rise to a cause of action, unless such failure were also a violation of plaintiff's legal rights—that is to say, unless it constituted a breach of a legal duty which the defendant owed to the plaintiff.

This action is brought under paragraph 3779, Revised Statutes of 1913, which reads as follows:

"In all cases where the livestock of any person is injured or killed by locomotive or cars of [on] any portion of the line of any railroad company within this state unfenced by good and sufficient fence or other barrier sufficient to turn livestock, the company . . . shall be liable in damage therefor to the owner of such livestock, to be recovered in any court of competent jurisdiction within this state, unless it be shown on the trial of any action instituted for the recovery of such damages, that the owner of such livestock, his agent or servants, immediately contributed to such killing or injury. . . ."

Public highway crossings are not within the purview of the statute as being "any portion of the line unfenced," etc., public convenience and necessity requiring, of course, that such crossings be kept open. *Bechdolt* v. *Grand Rapids & I. Ry. Co.,* 113 Ind. 343, 15 N. E. 686; *Prickett* v. *Atchison, T. & S. F. R. Co.,* 33 Kan. 748, 7 Pac. 611; *Corcoran* v. *Wabash R. Co.,* 138 Mo. App. 408, 122 S. W. 743.

Section 568 of the Penal Code of 1913 makes it a misdemeanor for any person willfully to obstruct any road by placing therein any impediment to transportation or travel thereupon. This is an express prohibition against the fencing in of highway crossings by railroad companies. So of course no action will lie for the killing or injury of livestock upon a public highway crossing because of the failure to maintain at such crossing "a good and sufficient fence or other barrier sufficient to turn livestock."

Appellee contends that, even though the proven facts do not show the stock to have been killed on an unfenced part of the line at a point where defendant is permitted by law to maintain a fence, but, on the contrary, show the killing to have taken place upon a public highway crossing which defendant is prohibited by law from fencing, nevertheless he is entitled to recover any damages consequent upon defendant's failure to maintain a sufficient fence, where such failure is the proximate cause of the injuries complained of; that, as the statute creates a right in his favor to have the right of way fenced for his protection, a remedy must exist to redress the violation of that right.

Appellant argues, however, that as paragraph 3779 does not make it the duty of the railroad company to fence its line of road, but merely creates a liability for the killing and injury of livestock on unfenced portions of its line, and there being no other provision of statute creating the duty to fence, no action for negligence will lie, because there is no breach of a legal duty.

That the basis of the action under paragraph 3779 is negligence has already been declared by this court in *Atchison etc. R. Co.* v. *Carrow,* 18 Ariz. 83, 156 Pac. 961. Also in passing upon the same question in determining the constitutionality of an Iowa statute similar in nature to paragraph 3779, the Supreme Court of the United States said:

"As it is thus the duty of the railway company to keep its tracks free from animals, its neglect to do so, by adopting the most reasonable means for that purpose, the fencing of its roadway as indicated by the statute of Iowa, justly subjects it, as already stated, to punitive damages where injuries are committed by reason of such negligence." *Minneapolis Ry. Co.* v. *Beckwith,* 129 U. S. 26, 32 L. Ed. 585, 9 Sup. Ct. Rep. 207 (see, also, Rose's U. S. Notes).

The text of the Iowa statute there under consideration, in so far as it relates to the question here presented, reads as follows:

"Any corporation operating a railway, that fails to fence the same against livestock running at large at all points where such right to fence exists, shall be liable to the owner of any such stock injured or killed by reason of the want of such fence for the value of the property or damage caused, unless the same was occasioned by the willful act. of the owner or his agent. . . ." (Code 1873, § 1289.)

The basis of the action authorized by the statute is negligence, that is, the failure of the railroad company to perform a duty thereby imposed upon it. It cannot be denied that the maintenance of a good and sufficient fence or other barrier is an essential part of the duty thus imposed, and that if a failure to maintain such a fence or barrier has resulted in a violation of plaintiff's rights, he is entitled to recover damages for injuries proximately resulting therefrom.

The question to be determined here, then, is whether or not the failure of the defendant to maintain a good and sufficient fence as disclosed by the evidence was a breach of a legal duty owing by defendant to plaintiff under the circumstances of the case, and therefore a violation of plaintiff's rights. Before we can answer that question it is necessary to ascertain just what plaintiff's rights are under the statute in question. His rights must be and are, of course, correlative to the duty imposed upon the railroad company, and the rights and duties of plaintiff and defendant depend upon the legislative intent, which is to be discovered from the interpretation or construction to be placed upon the statute.

In the case of *Ingalsbe* v. *St. Louis-San Francisco Ry. Co.* (Mo. App.), 219 S. W. 1005, decided by the Springfield Court of Appeals of the state of Missouri, a cow was killed as a result of eating sorghum cane growing upon a certain field adjoining the railway right of way. The animal came upon the right of way at a point where there was no fence, and from thence passed into the said field through or over the fence between that field and the right of way. The Missouri statute in express terms requires railway companies to fence their right of way to keep out livestock, or to respond in damages for certain injuries resulting from failure so to do. It was held that the statute does not give a common-law action for all damages which may be traced to such failure. The Court of Appeals certified the case to the Supreme Court of Missouri for final determination, which court upheld and approved the decision of the Court of Appeals (*Ingalsbe* v. *St Louis, S. F. Ry. Co.* (Mo.), 243 S. W. 323), holding that the intent of the legislature in passing the act requiring railroads to fence their right of way was the governing factor in determining whether or not a common-law action would lie in such a case because of the failure to fence.

The Arizona statute under consideration, unlike the Missouri statute, does not in express terms impose upon railroad companies the duty to fence their lines. The obligation arises only by implication from the imposition of the liability to pay damages. *Sullivan* v. *Oregon Ry. & Nav. Co.*, 19 Or. 319, 24 Pac. 408. Being implied, it arises only from the necessity of the occasion to supply something which it is obvious was tacitly understood to be within the purview of the act at the time of its passage. But it can rise no higher than the necessity. It exists as a necessary corollary to the liability to pay damages. The

liability is to pay, in the absence of a sufficient fence, damages for livestock killed or injured by locomotives or cars on any portion of the line which may lawfully be fenced, and the duty to fence does not extend beyond the requirement to prevent such killing and injury. In other words, the duty imposed is a combination of the requirement to fence and the requirement to refrain from killing and injuring livestock. Neither requirement is absolute in itself— no action will lie for the failure to fence alone, nor for the killing or injury of livestock, where a good and sufficient fence is maintained. It is the failure to perform both requirements that gives rise to the cause of action. It is thus easy to distinguish the correlative right of plaintiff to be, not to have the railway company fence its right of way for his protection at all events, but merely to have it refrain, in the absence of a sufficient fence, from killing or injuring plaintiff's livestock at such place as the law permits a fence to be erected. As the Supreme Court of the United States said in *Minneapolis Ry. Co.* v. *Beckwith, supra,* "It is thus the *duty* of the railway company *to keep its track free from animals.*" (Italics ours.) It may leave its line unfenced if it so chooses, there being no absolute duty, either at common law or by statute, to fence; and in such event it can be held liable because of so doing only for livestock "injured or killed by locomotive or cars" on any portion of the line which it is lawful to fence. It cannot be held liable for livestock injured or killed in any other way or on parts of the line which it is unlawful to fence, without alleging as negligence some other act than the failure to fence.

Although the statute is in derogation of the common law we have given it the most liberal construction of which its terms are susceptible, as paragraph

24 Ariz.—32

5551, Revised Statutes of 1913, requires. There is no room for a more liberal construction.

Appellant presents additional assignments of error based upon the giving of certain instructions to the jury. The conclusion here reached disposes of such assignments as the instructions complained of were all predicated upon the erroneous assumption by the trial court that upon the facts disclosed by the evidence the plaintiff had a common-law remedy against the defendant for the breach of a statutory duty to maintain a good and sufficient fence.

The judgment of the trial court is reversed and the cause remanded, with directions to dismiss the complaint.

ROSS, C. J., concurs.

McALISTER, J., being disqualified, took no part in the decision of this case.

FLANIGAN, J. (Specially Concurring).—I concur in the result. The uncontradicted evidence is that the cattle, after going on the right of way through the gap in the fence, got safely off the right of way to the public highway, wandering thereon to the track where they were killed. The appellant's negligence was therefore not the proximate cause of the killing of the cattle. The cattle had passed the right of way and the dangers thereon, and, having done so, a new chain of causes came into operation, too remote from that resulting from appellant's negligence to be connected therewith in any fair or reasonable sequence.

With such parts of the opinion which hold that the appellant cannot be held liable for the injuring or killing of livestock in any other way than that contemplated by the statute, or on parts of the line which it is unlawful to fence, I am of course in accord.

My reason for expressing my conclusions in this separate opinion is that I think that much that is said in the opinion is unnecessary to the decision. As to the duty imposed by the statute, it seems to me quite sufficient to say, as does the opinion, that—

"It cannot be denied that the maintenance of a good and sufficient fence or other barrier is an essential part of the duty thus imposed, and that, if a failure to maintain such a fence or barrier has resulted in a violation of plaintiff's rights, he is entitled to recover damages for injuries proximately resulting therefrom,"

—and that a failure to observe these requirements was negligence. And, as I have tried to make clear, the killing of the cattle was not the proximate result of such negligence of appellant.